UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-361-GWU

IRIS HOWARD, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

>   whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Iris Howard, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of seizures, anxiety/depression, and a history of alcohol abuse.  (Tr. 455).  Nevertheless, based, in part, on the testimony of a Medical Expert (ME) and a Vocational Expert (VE), the ALJ determined that Mrs. Howard retained the residual functional capacity to perform a significant number of jobs at all exertional levels existing in the economy, and therefore was not entitled to benefits.  (Tr. 456-9).  The Appeals Council declined to review, and this action followed.[1]

---

[1] The plaintiff filed her current SSI application on June 30, 2002 (Tr. 491-6). However, this application was consolidated with a prior application of May 11, 2000 (Tr. 80-4), which had been denied in a previous ALJ decision of February 13, 2002 (Tr. 491-6).  The plaintiff appealed the denial to this court, which remanded the case at the request of the Commissioner under Sentence Four of 42 U.S.C. Section 405(g) on May 14, 2003.  Howard v. Social Security Administration, London Civil Action No. 02-420-GWU (E.D. Ky.).  Although the ALJ appeared to believe that the court had made a decision on the merits (Tr. 455), this was not the case.  The plaintiff had filed previous SSI applications in 1993 and 1997, which were administratively denied and not

06-361 Howard

At the administrative hearing, the ALJ had asked the VE whether the plaintiff could perform any jobs if she were capable of work at all exertional levels but had the following non-exertional impairments. (Tr. 699). She: (1) could never climb ladders, ropes, or scaffolds; (2) could occasionally crawl; (3) should avoid all exposure to hazards such as machinery and heights; and (4) would have the mental restrictions set out by the ME, including a "poor" ability to deal with the public, deal with work stresses, and understand, remember, and carry out complex job instructions, a "fair to poor" ability to behave in an emotionally stable manner, a "fair" ability to follow work rules, relate to coworkers, use judgment, interact with supervisors, function independently, maintain attention and concentration for simple, routine tasks, understand, remember, and carry out detailed but not complex job instructions, maintain personal appearance, relate predictably in social situations, and demonstrate reliability, and a "good" ability to understand, remember, and carry out simple job instructions. (Tr. 697-700).[2]  The VE testified that such a person could work as a janitor or cleaner, with over 30,000 jobs in Kentucky and 2,225,000 jobs nationally. (Tr. 700).

---

appealed. The ALJ declined to reopen the prior applications. (Tr. 451). Therefore, although the plaintiff alleges an onset date of sometime in May, 1992 (Tr. 509), she is not eligible for benefits prior to May 11, 2000, her protective filing date. (Tr. 490-6).

[2]The ALJ specified that "good" was defined as "more than satisfactory," "fair" was defined as "satisfactory," and "poor" was defined as "limited but not totally precluded." (Tr. 697).

06-361  Howard

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence and that they fairly depict the plaintiff's condition.

Mrs. Howard alleged disability due to seizures, panic attacks, depression, and limited use of her left shoulder.  (Tr. 509).  She testified that she had injured her left shoulder during a seizure, and her left arm was still weak.  (Tr. 43).  She testified that her seizure problems began in approximately 1992, and although she took her medication as prescribed, she could not tell that it made any difference.  (Tr. 30-1, 691).  She had panic attacks and crying spells and wanted to avoid crowds, despite taking the medications Zoloft and Xanax.  (Tr. 35-9, 693).

Older records in the transcript do indicate that the plaintiff had a <u>right</u> shoulder injury after a seizure in June, 1994 (Tr. 260) and she was found to have a decreased range of motion of the <u>left</u> shoulder on examination by Dr. Mitchell Wicker in November, 2000 (Tr. 322).  Otherwise, her physical examination in November, 2000 was normal except for poor dentition.  (Tr. 322-5).  The most recent physical examination of the plaintiff, by Dr. Monte Edward Martin on August 6, 2004, showed no physical abnormalities, and Dr. Martin placed no restrictions on the plaintiff.  (Tr. 673-9).  No treating or examining source placed limitations due to musculoskeletal problems.  Therefore, there is substantial evidence to support the ALJ's determination that the plaintiff had no reaching limitations.  Otherwise, he gave Mrs.

Howard the benefit of the doubt in adopting restrictions on climbing, crawling, and avoiding exposure to hazards, based on her allegation of seizure activity. The restrictions were consistent with the reports of state agency reviewing physicians. (Tr. 580-8, 627-34).

The plaintiff's primary argument on appeal is that the ALJ improperly rejected the functional capacity assessment of her treating family physician, Dr. Richard Stoltzfus. Dr. Stoltzfus opined on May 4, 2004, that the plaintiff had a diagnosis of seizures, and had approximately two to four of them per week. (Tr. 665). However, he had last seen Mrs. Howard in August of the previous year, and the only two dates that he could list for her most recent seizures were "5-3" and "4-26" suggesting that he was relying on patient history for the information. (Id.). Clearly, the frequency of these seizures as alleged would preclude substantial gainful activity, but the physician also noted that Mrs. Howard was not compliant with taking her medications. (Tr. 666). The ALJ found that the plaintiff's history of non-compliance with medication meant that she could not be found disabled due to seizures, based on standards set out in Social Security Ruling 87-6, which provides that only a small percentage of epileptics are precluded from engaging in substantial gainful activity when they are compliant with medications. (Tr. 455-6). The plaintiff challenges this rationale, and notes that Dr. Stoltzfus also checked a box indicating that Mrs. Howard's non-compliance with her medication regimen did not make a difference in

the frequency of seizures. The Commissioner suggests that this was merely a reflection of the plaintiff's subjective opinion. While this is not clear from the face of the document, the physician's medical records do reflect that three days after he prepared the functional capacity assessment, he provided a prescription for the anti-seizure medications Dilantin and Tegretol (Tr. 670) which makes the defendant's interpretation highly persuasive. Dr. Stoltzfus's office note from May 4, 2004, the date of the functional capacity assessment, says that the plaintiff had indicated that she had stopped taking her medication because she did not feel it helped her. (Tr. 669). Previously, she had been diagnosed with breakthrough seizures secondary to low Dilantin level in January, 2002 (Tr. 623) and had almost no Dilantin in her bloodstream after a complaint of a seizure in March, 2002 (Tr. 566, 569). Her Dilantin level had also been zero after a complaint of two seizures in September, 2000. (Tr. 343, 345). Accordingly, there is substantial evidence to support a conclusion that the evidence failed to establish uncontrolled seizure activity despite therapeutic levels of medication.

      The plaintiff also argues that the mental restrictions were inadequate because they did not reflect limitations given by Dr. Kevin Eggerman, an examining source, as well as non-examining state agency reviewers. The mental restrictions were based on the testimony of Dr. Dixie Moore, the ME who testified at the May 5, 2004 administrative hearing. (Tr. 696-700). The plaintiff asserts that Dr. Moore did not

06-361 Howard

provide a rationale for the rejection of the opinion of Dr. Eggerman or the state agency reviewers. However, Dr. Eggerman had concluded that the plaintiff would have a "fair to poor" ability to understand and remember complex instructions, and at least a "fair" ability in all other areas. (Tr. 595). He did not define the terms "fair" or "poor," but there is no clear inconsistency between his conclusions and that of the ME. The ALJ was not bound to accept the opinion of the non-examiners over that of an examiner such as Dr. Eggerman and could reasonably have accepted the testimony of Dr. Moore as being consistent with the conclusions of Dr. Eggerman.

The decision will be affirmed.

This the 31st day of August, 2007.

Signed By:

_G. Wix Unthank_ 

**United States Senior Judge**